IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TONYA N. MCCOY                                                                                      PLAINTIFF

      v.                                              CIVIL NO. 14-5050

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                                DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff, Tonya McCoy, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB") under the provisions of Title II of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background**

      Plaintiff protectively filed her application for DIB on January 24, 2011, alleging an inability to work since December 15, 2009 due to "rheumatoid arthritis, right ankle injury, left wrist injury, and right arm injury." (Tr. 195, 198). For DIB purposes, Plaintiff's date last insured was March 31, 2011. (Tr. 11). Her claim was initially denied on May 20, 2011, and denied upon reconsideration on August 9, 2011. (89-91, 93-96). An administrative hearing was held on October 23, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 40-86). By a written decision dated November 9, 2012, the Administrative Law Judge ("ALJ") found that during the relevant time period Plaintiff had the following severe impairments: rheumatoid arthritis; chronic multi-joint pain; obesity; and

anemia. (Tr. 11). After reviewing all of the evidence presented, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 11-12). The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) except:

> "she could occasionally climb ramps/stairs, could never climb ladders/ropes/scaffolds, and could occasionally balance, stoop, kneel, crouch, and crawl. She could do no overhead work or reaching bilaterally. She could occasionally reach in all other directions bilaterally and could occasionally handle bilaterally." (Tr. 12).

With the help of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform her past relevant work ("PRW"), but Plaintiff retained the capacity to perform the requirements of representative occupations such as telephone assembler and information clerk. (Tr. 15-16, 47-48). The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (Tr. 16).

Plaintiff next requested a review of the hearing decision by the Appeals Council, which denied the request on December 5, 2013. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1).This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both Parties have filed appeal briefs, and the case is ready for decision. (Doc. 12; Doc. 15).

**II. Applicable Law.**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed

if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security Disability Benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy

given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.

**III. Discussion**

Plaintiff raises the following arguments on appeal: The ALJ erred (1) by not considering all of her impairments in combination, (2) by discounting her subjective complaints of pain, and (3) by determining an improper RFC.

    **A. Combined Impairments**

Plaintiff believes the ALJ failed to consider her obesity in combination with her other severe impairments. (Doc. 12 at 14-16).

The ALJ noted obesity may have an adverse impact on co-existing impairments and stated Plaintiff's obesity "clearly contributes to the severity of her condition and results in limited mobility and increased health risk." (Tr. 11, 14). The ALJ also stated that in determining Plaintiff's RFC, he considered "all of the claimant's impairments, including impairments that are not severe." (Tr. 10). The ALJ further found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (Tr. 11). The ALJ's language demonstrates he considered the combined effect of Plaintiff's impairments. See e.g., Hajek v. Shalala, 30 F.3d 89, 92 (8th Cir. 1994).

Accordingly, the Court finds the ALJ's step two determination was based on substantial evidence.

    **B.  Credibility Analysis**

The ALJ was required to consider all of the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities;

(2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. It is well established that "credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966 (8th Cir. 2003). The ALJ is entitled to make a factual determination that a claimant's subjective complaints are not credible when contrary objective medical evidence exists. Ramirez, 292 F.3d at 581 (8th Cir. 2002).

     The written decision shows the ALJ addressed the Polaski factors. The ALJ considered Plaintiff's claims that she had residual pain from an ankle injury, trouble standing and walking, and reduced mobility in her arms and ankle. (Tr. 12-13). Plaintiff's medications and activities were discussed, which included shopping and caring for her four-year-old and two seven-year-old children. The ALJ also noted Plaintiff's reported limitations, such as her trouble driving long distances without stopping and her use of an electronic scooter when she shopped for groceries. (Tr. 13). The ALJ discounted Plaintiff's claims of disabling pain, however, because her claims were not supported by treatment records, physical therapy and medications improved her conditions, her physicians considered her conditions controlled, her daily activities were inconsistent with disability, and her treatment was conservative. (Tr. 13). These were valid reasons for discounting Plaintiff's claim of disabling pain. See e.g., Renstrom v. Astrue, 680 F.3d 1057, 1067 (8th Cir. 2012).

     A review of the record shows there was substantial evidence to support the ALJ's credibility determination. Plaintiff's Function Report indicated she was socially active and the primary

caregiver for her young children. (Tr. 218-220). Her conditions improved when she attended physical therapy, but she stopped attending against medical advice. (Tr. 214, 279-281, 291). Her noncompliance with recommended treatment was inconsistent with disability. See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989). Finally, Plaintiff's delay in establishing treatment with a rheumatoligist was unexplained and damaging to her credibility. See Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996).

Based upon the foregoing, the undersigned concludes there is substantial evidence to support the ALJ's credibility findings.

**C. RFC**

RFC is the most a person can do despite that person's limitations, and is assessed using all relevant evidence in the record. 20 C.F.R. §404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393. F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §404.1545(a)(3). A claimant's residual functional capacity is a medical question, Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001), therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). The ALJ is required to specifically set forth a claimant's limitations and to determine how those limitations affect her RFC. Id.

As the ALJ noted, Plaintiff's treatment was conservative. She originally sought treatment in February 2010 for an ankle injury after she tripped and fell, but a wrist injury from a second fall

in May 2010 compounded her treatment. (Tr. 299-300, 309-310). On May 24, 2010, Dr. Cody Grammar assessed that she likely had a tear in her left wrist after reviewing her x-ray. (Tr. 300-301). He opined it was an injury that could linger, but "should heal and not cause any long-term deficit." (Tr. 297-300). In July 2010, Dr Grammar explained physical therapy would improve the range of motion in Plaintiff's left wrist, but expressed concern that Plaintiff had discontinued her treatment. (Tr. 291). By August 2010, treatment records from Dr. Jason Pleiman indicated Plaintiff's ankle condition had substantially improved, and Dr. Pleiman noted she could walk normally. (Tr. 290).

In September 2010, Plaintiff complained to Dr. Grammar about a new problem with her right elbow. (Tr. 287). Dr. Grammer noted her left wrist was improving, but assessed her right elbow was swollen and her extension was reduced by twenty to thirty degrees. (Tr. 287). He referred her to Dr. Jeff Johnson to see if she was a candidate for arthroscopy. (Tr. 287). Plaintiff saw Dr. Johnson one week later, who assessed she might have inflammatory arthropy. (Tr. 279-281). He recommended a local anesthetic injection and gentle therapy. (Tr. 281). In December 2010, Plaintiff had a visit with Dr. Allen Martin, who was treating her for anemia. (Tr. 318-321). Dr. Martin noted her right elbow had ten to fifteen percent reduced extension, her left wrist was mildly tender, and her gait was improved but not quite smooth. (Tr. 319). He noted, "her arthritis symptoms are somewhat improved ... she feels better," but referred Plaintiff to a rheumatologist for specialized treatment. (Tr. 320).

Plaintiff's DLI was March 31, 2011. (Tr. 11, 195). On May 17, 2011, Dr. David Hicks, a non-examining state physician, completed a physical RFC Assessment and opined Plaintiff had a medically determinable impairment of rheumatoid arthritis and that her RFC was light work. (Tr. 362).

Plaintiff did not establish treatment with a rheumatologist until she saw Dr. Michael Saitta on May 6, 2011. (Tr. 345-352). Dr. Saitta assessed a possible diagnosis of rheumatoid arthritis based on her positive ANA lab work and joint stiffness. (Tr. 345-347). He prescribed Tramadol. (Tr. 344). Plaintiff did not continue treatment with Dr. Saitta for unexplained reasons. (Tr. 61). Plaintiff finally established consistent treatment with Dr. Jessica Short, a rheumatologist, on September 21, 2011. (Tr. 401-405). She saw Dr. Short on several more occasions between October 2011 and July 2012. (Tr. 409-412, 425, 429-431, 440-445, 450-455). Dr. Short initially assessed Plaintiff likely had rheumatoid arthritis, but noted Plaintiff's pain and swelling improved when she took NSAIDS. (Tr. 401-405). On October 26, 2011, Dr. Short saw Plaintiff and remarked in the treatment notes that she was very concerned about the aggressiveness of Plaintiff's disease. (Tr. 409-412). Dr. Short prescribed steroids and Plaquenil. (Tr. 412). In subsequent visits, however, Dr. Short recorded that treatment had improved Plaintiff's symptoms and reduced her pain to a 4/10. (Tr. 425, 429). In April 2012 and July 2012, Dr. Short noted that Plaintiff was doing very well and had only occasional joint pain, but Dr. Short indicated a self-injectable biological treatment was an option to help Plaintiff further improve. (Tr. 440, 455). On August 19, 2011, Dr. Patricia McCarron, a state non-examining physician, reviewed the new treatment records and affirmed Dr. Hicks's RFC assessment of light work. (Tr. 400).

On October 3, 2012, Dr. Short wrote a one page letter in which she described Plaintiff's treatment. She also opined:

> "Although we will hopefully be able to have her get into remission in regards to her RA, she may continue to have lifelong pain and secondary degenerative pain ... due to the duration of the disease prior to her starting treatment. ... Continued issues which hinder her ability to do long-term work include intermittent pain and significant loss of motion in her left wrist. She also has right ankle pain and swelling which is exacerbated by her walking for long

>distances. ... I have been asked about her ability to perform an 8 hour work day and I personally do not think that this is something which she would be able to perform at this time due to previously mentioned issues." (Tr. 478).

The ALJ addressed Dr. Short's treatment records and letter, but rejected Dr. Short's opinions for two reasons. (Tr. 13-15). First, the ALJ noted "Dr. Short gives the claimant no specific limits in her statement and there are no objective findings ... to support claimant is unable to do any job." (Tr. 14) Second, the ALJ explained the issue of disability is one reserved for the Commissioner." (Tr. 14-15).

Plaintiff's only specific argument for remand is the ALJ's treatment of Dr. Short's opinions. (Doc. 12 at 18-19). She believes Dr. Short's opinions should have been given controlling weight. (Doc. 12 at 19). Defendant argues the ALJ's determination should be affirmed and supports her argument with a long list of authorities. Among many cases, the Defendant cites Renstrom, 680 F.3d at 1065, where the Eight Circuit held a physician's opinion of "totally disabled" receives "no deference because it invades the province of the Commissioner," and Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006), which held the ALJ appropriately gave a treating physician's opinion less deference because the opinion was given after the claimant's date last insured had expired. The authorities cited by the Defendant have been examined and are persuasive. The ALJ considered Dr. Short's letter and weighed it against the physician's treatment records and the record as a whole before properly discounting it. See Cox, 471 F.3d at 907.

Having carefully reviewed the record, the Court finds the ALJ's RFC determination accounted for all of Plaintiff's credible limitations. Plaintiff reported that physical therapy and her medications significantly helped her pain. (Tr. 214). Her records indicated her conditions were treated conservatively and improved with treatment. (Tr. 287, 290, 296, 425, 429, 440, 455). See Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009). Plaintiff did not receive pain medications for her

rheumatoid arthritis during the relevant time period and had a long, unexplained delay in establishing treatment with a rheumatologist. The absence of a pain killer prescription and her failure to seek medical treatment for such a long time indicated Plaintiff's pain was tolerable. Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995).

Plaintiff's lifestyle also showed her impairments were not disabling. Plaintiff testified that during the relevant time period that she "put a few applications in ... and did kind of pursue some jobs because my family needed help." (Tr. 59). Even though she was not working, she was an active homemaker and contributor to her church community. In her April 2011 Function Report, she documented that she cared for her three young children, drove, cooked, and completed chores every day. (Tr. 216-217). She also reported she traveled 6-8 times a year, shopped every week, went to physical therapy twice a week, and attended church three times a week, where she sang in her choir and helped out in the children's ministry. (Tr. 216-220). These activities were consistent with an ability to work. See Roberson v. Astrue, 481 F.3d 1020, 1025 (8th Cir. 2007).

Although it is clear that Plaintiff suffers with some degree of limitation, she has not established she was unable to engage in any gainful activity during the relevant time period. Accordingly, the Court finds the ALJ's RFC determination was based on substantial evidence.

**D. Hypothetical Question**

After thoroughly reviewing the hearing transcript, along with the entire evidence of record, the undersigned finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the undersigned finds the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff retained the capacity

to perform the requirements of representative occupations such as telephone assembler and information clerk, and was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV. Conclusion:**

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

Dated this 21st day of January 2015.

*s/ Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE